

Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | P. Michael Mahoney | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 50372 | **DATE** | 7/30/2002 |
| **CASE TITLE** | GRAVES vs. BARNHART | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   Pursuant to the attached Memorandum Opinion and Order, Plaintiff's Motion for Summary Judgment is denied. Defendant's Motion for Summary Judgment is granted. Enter attached Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | JUL 3 1 2002 date docketed | 16 |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 7/30/2002 date mailed notice | |
| tml | courtroom deputy's initials | gg mailing deputy initials | |
| | Date/time received in central Clerk's Office | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| VICKI L. GRAVES, ) | |
| ) | |
| Plaintiff, ) | Case No. 01 C 50372 |
| ) | |
| v. ) | Magistrate Judge |
| ) | P. Michael Mahoney |
| JO ANNE B. BARNHART, ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Vicki L. Graves (Plaintiff), seeks judicial review of the final decision of the Commissioner of the Social Security Administration (Commissioner). See 42 U.S.C. §§ 405(g), 1383(c)(3). The Commissioner's final decision denied Plaintiff's application for Supplemental Security Income Benefits (SSI) pursuant to sections 1602 and 1614 (a)(3)(A) of the Social Security Act. This matter is before the Magistrate Judge pursuant to consents filed by both parties on January 22, 2002. See 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

### I. BACKGROUND

Plaintiff first filed an application for SSI on February 10, 2000, alleging that she has been disabled since January 15, 1995. (Plaintiff's memorandum at 1). Her inability to work is based upon asthma, type 2 diabetes, high blood pressure, hepatitis C, arthritis, and bursitis. (Plaintiff's memorandum at 1). Plaintiff's application for benefits was initially denied on April 25, 2000. (Tr. 70). On May 10, 2000, Plaintiff filed a request for reconsideration. (Tr. 80). Plaintiff's request for

reconsideration was subsequently denied on July 11, 2000. (Tr. 82-84). Plaintiff then filed a request for a hearing before an Administrative Law Judge (ALJ) on July 28, 2000. (Tr. 85-86). On March 7, 2000, Plaintiff appeared, with counsel, before ALJ Robert T. Karmgard, who heard the testimony of the Plaintiff and a vocational expert. (Tr. 20-69). On April 27, 2001, the ALJ issued the decision that Plaintiff was not eligible for Supplemental Security Income. (Tr. 17). On May 3, 2001, Plaintiff requested a review of the ALJ's decision by the Appeals Council. (Tr. 6-7). On September 22, 2001, the Appeals Council denied Plaintiff's request for review. (Tr. 4-5). Plaintiff then sought review by this court.

## II. FACTS

Plaintiff, born in Rockford, Illinois, on April 17, 1956, is a forty-six year old married woman with two dependent children. (Plaintiff's memorandum at 3). She received her education through the tenth grade and is literate. (Plaintiff's memorandum at 3). The ALJ found there to be no past relevant work experience constituting substantial gainful activity. (Defendant's memorandum at 2). Plaintiff claims disability as of January 15, 1995, based upon diabetes mellitus, hepatitis C, asthma, hypertension, visual acuity deficit, gastroesophageal disease (GERD), and anemia. (Tr. 17-18).

Plaintiff testified, at the hearing, that she suffers from the aforementioned medical conditions. (Tr. 23-55). When Plaintiff was asked how her condition affected her daily activities, she stated that she cannot do much other than lay around and do some dishes. (Tr. 28). She cannot vacuum or sweep nor lift anything heavy due to arthritis in her shoulders. (Tr. 28-29). In addition, Plaintiff added that she cannot walk too long because she becomes out of breath, but that she can drive a car. (Tr. 30). Plaintiff's medication includes Albuterol, Glucophage, Colucotrol, Dyazide, Prilosec, Ferrous Sulfate, Darracet, Flovent, and Ventolin. (Tr. 143). Plaintiff also uses regular inhalers and a nebulizer when her asthma bothers her. (Tr. 31). Plaintiff used to perform cook work,

stock work, and tend bar, all at Loafers. (Tr. 27). However, she has not worked at all since 1991. (Tr. 27).

Christopher Yep, a certified rehabilitation counselor, testified before the ALJ as a vocational expert. (Tr. 55). The ALJ posed a hypothetical to Mr. Yep concerning the ranges or basis of work that remained for an individual with certain characteristics and limitations. (Tr. 57-58). The ALJ directed him to assume an individual with Plaintiff's vocational characteristics and the following limitations: "the individual can lift and carry up to a maximum of 20 pounds on an occasional basis and ten pounds frequently, can sit, stand, and walk respectively, with normal breaks, for up to six hours each within an eight-hour day. The individual may not climb ladders, ropes, or scaffolds, but may otherwise climb ramps and stairs, balance, stoop, kneel, crouch, and crawl no more than on an occasional basis. The individual must further avoid concentrated exposure to fumes, odors, dust, gases, and other pulmonary irritants." (Tr. 57-58).

Mr. Yep answered that several jobs exist which can be performed by a person with those limitations. (Tr. 58). Mr. Yep testified that such a person can perform work as a telephone quotation clerk, handpackager, and cashier. (Tr. 58). The Vocational Expert testified there would be 43,816 sedentary quotation clerk jobs, 44,743 light handpackager jobs, and 129,117 sedentary and light cashier jobs in Illinois. (Tr. 58-59).

The ALJ asked a follow-up question requiring Mr. Yep to add the assumption that the individual must avoid more than moderate exposure to pulmonary irritants and must avoid exposure to hazardous machinery and heights or excavations. (Tr. 59-60). Mr. Yep stated that the number of handpackaging jobs would decrease by half. (Tr. 60). The ALJ posed another hypothetical question asking him to assume that the individual is limited to lifting and carrying up to ten pounds only occasionally and standing and walking a total of two hours in an eight-hour day for no longer than

3

15 to 20 minutes continuously. (Tr. 60). Mr Yep testified that such a person could not perform any of the handpackaging jobs and would also not be able to perform 60 percent of the cashiering jobs identified which require light exertion. (Tr. 60-61). Further, Mr. Yep stated that the hypothetical person could perform the remaining sedentary jobs if she had to alternate between sitting and standing with a two to three minute break every hour. (Tr. 61). The Vocational Expert also testified that one to two minutes of visual problems occurring up to three times per week would not impact a person's ability to perform the remaining positions. (Tr. 62-63). Mr. Yep stated if that hypothetical individual had to elevate her feet by a height of two feet while in a seated position for half an hour once a day, she may not be able to perform the cashier or telephone quotation clerk jobs. (Tr. 64).

Plaintiff's attorney then examined Mr. Yep. Mr Yep testified that the individual could not perform the identified sedentary jobs if she could not sit for at least an hour at a time. Mr. Yep stated that employers would not accept a person needing to take three to four unscheduled breaks per day of up to six minutes, but that employers do generally allow one absence per month. (Tr. 68).

### III. <u>MEDICAL HISTORY</u>

Plaintiff has been suffering from asthma since she was young, but stated it has become more severe since 1995. (Plaintiff's memorandum at 2). She was also diagnosed with type 2 diabetes mellitus in 1997. (Plaintiff's memorandum at 2). Further, in December 1998, Plaintiff was diagnosed with GERD symptoms and declined treatment upon being diagnosed with hepatitis C. (Tr. 13). Records through January of 2000 report her as having generally stable health. (Tr. 13).

Since 1995, Dr. Gordon Eggers, from the Crusader Clinic, has been Plaintiff's primary care physician. (Tr. 163-206). Dr. Eggers has continually treated and prescribed various medications for Plaintiff to treat her GERD, asthma, hypertension, diabetes, arthritis, and hepatitis C. (Tr. 163-206).

4

These medications include Albuterol, Flovent, and Ventolin to treat her asthma; Glucophage and Colucotrol to treat her diabetes; Dyazide for her high blood pressure; Prilosec for heart burn and indigestion; Ferrous Sulfate to help with her anemia; and Darracet to treat the arthritis in Plaintiff's shoulder and neck. (Tr. 143). In late January of 2000, Dr. Eggers reported that she had intermittent polydypsia without dysphasia, but that her lungs and asthma were stable. (Tr. 168-169).

After complaining of visual deficiencies, Plaintiff was seen by Dr. Edward Yavitz in February of 2000 for an eye examination. (Tr. 146-150). This exam revealed a visual acuity of 20/30 or 20/40 bilaterally, and her watery and itchy eyes were attributed to allergies. (Tr. 149-150). On February 28, 2000, Dr. Eggers treated her dry eyes with artificial tears, and her GERD and asthma were reported as stable. (Tr. 166). Through June of 2000, Plaintiff's diabetic and asthma symptoms improved and her GERD and hypertension were stable. (Tr. 164-165).

In April of 2000, Dr. Ramchandani performed an internal medicine consultative examination for the Bureau. (Tr. 151-154). During this exam, Plaintiff complained of joint and neck pain, as well as frequent asthmatic attacks. (Tr. 151). Dr. Ramchandani noted only a reduction in lumbar and cervical spine range of motion, and Plaintiff's gait was normal. (Tr. 151-154). The doctor also noted Plaintiff had no respiratory, neurological, speech, memory, sensory, motor or reflex deficits. (Tr. 151-154). Overall, Dr. Ramchandani's diagnostic impressions included osteoarthritis (involving multiple joints), GERD, hypertension, non-insulin dependent diabetes mellitus, and hepatitis-C. (Tr. 152).

In October of 2000, Plaintiff's weight was reported at 180 pounds, over 20 pounds less than her weight of 202 pounds in 1998. (Tr. 231). In November and December of that year, she reported generalized fatigue and weekly diarrhea symptoms. (Tr. 231). Upon examination, Plaintiff reported that her weight was at 172 and 3/4 pounds, but some of her symptoms were attributable to a viral

syndrome. (Tr. 231). Doctor Eggers then prescribed iron supplements to deal with the weight loss. (Tr. 231). The doctor noted her hypertension and asthma were stable, but her diabetes needed some improvement. (Tr. 231).

In March of 2001, Plaintiff testified that she lies down daily due to fatigue and cannot do any heavy lifting due to cramps and pain in her neck and shoulders. (Tr. 28-29). She complained of shortness of breath and stated that she cannot walk far due to her asthma and diabetes. (Tr. 28-30). Plaintiff stated that she has visual problems, as well as daily episodes of diarrhea. (Tr. 33-37). She also has occasional headaches and hypertension which cause her to become short of breath and she becomes flushed due to stress or overexertion. (Tr. 30-31).

On April 24, 2000, Dr. Angela Gaffigan completed a physical Residual Functional Capacity (RFC) analysis as to Plaintiff. (Tr. 155-162). Dr. Gaffigan found no manipulative, postural, or communicative limitations, and she found Plaintiff is capable of light work with postural and environmental limitations. (Tr. 155-162). These limitations are due to Plaintiff's asthmatic and arthritic conditions. (Tr. 157-159).

On June 27, 2000, another Physical RFC assessment was completed as to Plaintiff by Dr. Robert Reed. (Tr. 207-214). In this assessment, Dr. Reed reaffirmed the assessment of Dr. Gaffigan when he stated, "Based on evidence in file, claimant is capable of light work with postural and environmental limitations." (Tr. 214). With respect to the postural limitations, Plaintiff's impairments prohibit her from climbing and crouching, and her asthma precludes her from working around fumes, odors, dusts, and gases. (Tr. 207-214).

## IV. STANDARD OF REVIEW

The court may affirm, modify, or reverse the ALJ's decision outright, or remand the proceeding for rehearing or hearing of additional evidence. 42 U.S.C. § 405(g). Review by the court, however is not *de novo*; the court "may not decide the facts anew, reweigh the evidence or substitute its own judgment for that of the ALJ." *Meredith v. Bowen*, 833 F.2d 650, 653 (7th Cir. 1987) (citation omitted); *see also Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). The duties to weigh the evidence, resolve material conflicts, make independent findings of fact, and decide the case accordingly are entrusted to the commissioner; "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Commissioner (or the Commissioner's delegate the ALJ)." *Richardson v. Perales*, 402 U.S. 389, 399-400 (1971), *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987). If the Commissioner's decision is supported by substantial evidence, it is conclusive and this court must affirm. 42 U.S.C. § 405(g); *see also Arbogast v. Bowen*, 860 F.2d 1400, 1403 (7th Cir. 1988). "Substantial evidence" is "such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.

The Seventh Circuit demands even greater deference to the ALJ's evidentiary determinations. So long as the ALJ "minimally articulate[s] his reasons for crediting or rejecting evidence of disability," the determination must stand on review. *Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir. 1992). Minimal articulation means that an ALJ must provide an opinion that enables a reviewing court to trace the path of his reasoning. *Walker v. Bowen*, 834 F.2d 635, 643 (7th Cir. 1987), *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985). Where a witness credibility determination is based upon the ALJ's subjective observation of the witness, the determination may only be disturbed if it is "patently wrong" or if it finds no support in the record. *Kelley v. Sullivan*,

7

890 F.2d 961, 965 (7th cir. 1989), *Stuckey v. Sullivan*, 881 F.2d 506, 509 (7th Cir. 1989). "However, when such determinations rest on objective factors of fundamental implausibilities rather than subjective considerations, [reviewing] courts have greater freedom to review the ALJ decision." *Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1994), *Yousif v. Chater*, 901 F. Supp. 1377, 1384 (N.D. Ill. 1995).

## V. **FRAMEWORK FOR DECISION**

The ALJ concluded that Plaintiff did not meet the Act's definition of "disabled," and accordingly denied her application for benefits. "Disabled" is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382(c)(3)(A). A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382(c)(3)(C). *See Clark v. Sullivan*, 891 F.2d 175, 177 (7th Cir. 1988).

The Commissioner proceeds through as many as five steps in determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f) (1998).[1] The Commissioner sequentially determines the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant suffers from a severe impairment; (3) whether the impairment meets or is medically equivalent to an impairment in the Commissioner's Listing of

---

[1]The Commissioner has promulgated parallel regulations governing disability determinations under Title II and Title XVI. See 20 C.F.R. Ch. III, Parts 404, 416. For syntactic simplicity, future references to Part 416 of the regulations will be omitted where they are identical to Part 404.

8

Impairments; (4) whether the claimant is capable of performing work which the claimant performed in the past; and (5) whether the claimant is capable of performing any other work in the national economy.

At Step One, the Commissioner determines whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520 (a),(b). Substantial gainful activity is work that involves doing significant and productive physical or mental duties that are done, or intended to be done, for pay or profit. 20 C.F.R. § 404.1510. If the claimant is engaged in substantial gainful activity, he is found not disabled, regardless of medical condition, age, education, or work experience, and the inquiry ends; if not, the inquiry proceeds to Step Two.

Step Two requires a determination whether the claimant is suffering from a severe impairment.[2] A severe impairment is one which significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). The claimant's age, education, and work experience are not considered in making a Step Two severity determination. 20 C.F.R. § 404.1520(c). If the claimant suffers from severe impairment, then the inquiry moves on to Step Three; if not, then the claimant is found to be not disabled, and the inquiry ends.

At Step Three, the claimant's impairment is compared to those listed in 20 C.F.R. Ch. III, Part 404, Subpart P, Appendix 1. The listings describe, for each of the major body systems, impairments which are considered severe enough *per se* to prevent a person from doing any significant gainful activity. 20 C.F.R. §§ 404.1525(a). The listings streamline the decision process by identifying certain disabled claimants without need to continue the inquiry. *Bowen v. New York*,

---

[2]The claimant need not specify a single disabling impairment, as the Commissioner will consider the combined affect of multiple impairments. See, e.g., 20 C.F.R. § 404.1520(c). For syntactic simplicity, however, this generic discussion of the Commissioner's decision-making process will use the singular "impairment" to include both singular and multiple impairments.

9

476 U.S. 467 (1986). Accordingly, if the claimant's impairment meets or is medically equivalent to one in the listings, then the claimant is found to be disabled, and the inquiry ends; if not, the inquiry moves on to Step Four.

At Step Four, the Commissioner determines whether the claimant's residual functional capacity allows the claimant to return to past relevant work. Residual functional capacity is a measure of the abilities which the claimant retains despite his impairment. 20 C.F.R. § 404.1545(a). Although medical opinions bear strongly upon the determination of residual functional capacity, they are not conclusive; the determination is left to the Commissioner, who must resolve any discrepancies in the evidence and base a decision upon the record as a whole. 20 C.F.R. § 404.1527(e)(2); *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995). Past relevant work is work previously performed by the claimant that constituted substantial gainful activity and satisfied certain durational and recency requirements. 20 C.F.R. § 404.1465; Social Security Ruling 82-62. If the claimant's residual functional capacity allows him to return to past relevant work, then he is found not disabled; if he is not so able, the inquiry proceeds to Step Five.

At Step Five, the Commissioner must establish that the claimant's residual functional capacity allows the claimant to engage in work found in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(f), 404.1566. The Commissioner may carry this burden by relying upon vocational expert testimony, or by showing that a claimant's residual functional capacity, age, education, and work experience coincide exactly with a rule in the Medical-Vocational Guidelines (the "grids"). *See* 20 C.F.R. Ch. III, Part 404 Subpart P, Appendix 2; *Walker v. Bowen*, 834 F.2d 635, 640 ( 7th Cir. 1987); Social Security Law and Practice, Volume 3, § 43:1. If the ALJ correctly relies on the grids, vocational expert evidence is unnecessary. *Luna v. Shalala*, 22 F.3d 687, 691-92 (7th Cir. 1994). If the Commissioner establishes that sufficient work exists in

10

the national economy that the claimant is qualified and able to perform, then the claimant will be found not disabled; if not, the claimant will be found to be disabled.

## VI. ANALYSIS

The court will proceed through the five step analysis in order.

A. Step One: Is the claimant currently engaged in substantial gainful activity?

In performing the Step One Analysis the ALJ found that Plaintiff had not engaged in any substantial gainful activity since the alleged onset of the disability at any time relevant to his decision issued April 27, 2001. (Tr. 12).

Under ordinary circumstances, a claimant is engaged in substantial gainful activity if the claimant's earnings averaged more than seven hundred and eighty dollars per month for years after January 1, 2001. (20 C.F.R. § 1574 (b) (2) Table 1, as modified by 65 FR 82905, December 29, 2000).

The finding of the ALJ as to Step One of the Analysis is not challenged by either party and the court finds no reason to disturb this finding. The ALJ's determination as to Step One of the Analysis is affirmed.

B. Step Two: Does the claimant suffer from a severe impairment?

In performing the Step Two Analysis, the ALJ found Plaintiff suffered from severe impairments. Specifically, the ALJ found Plaintiff to have the following medically determinable impairments: diabetes mellitus; hepatitis C; asthma; hypertension; visual acuity deficit; gastroesophageal reflux disease (GERD); and anemia. (Tr. 16). The ALJ held that her impairments significantly limit her ability to perform basic work activities. (Tr. 16).

Substantial evidence exists to support the ALJ's determination that Plaintiff suffers from

11

severe impairments. This finding is not challenged by either party and the court finds no reason to disturb it. The ALJ's finding as to Step Two of the Analysis is affirmed.

C.  Step Three: Does claimant's impairment meet or medically equal an impairment in the Commissioner's listing of impairments?

In performing the analysis for Step Three, the ALJ determined that Plaintiff's impairments do not meet the requirements or equal the level of severity contemplated under any listing included in Appendix 1 to Subpart P, Regulations No. 4. (Tr. 16). The ALJ held that "the claimant has not generally received the type of medical treatment one would expect for a totally disabled individual. Moreover, the record does not contain any opinions from treating or examining physicians indicating that the claimant is disabled or even has limitations greater than those determined in this decision." (Tr. 15). In his conclusions, the ALJ stated that the Plaintiff's complaints of disabling symptoms and limitations are not considered entirely credible for the reasons set forth in the body of his decision. (Tr. 16).

The ALJ's determination at this step is supporter by substantial evidence. The ALJ's determination as to Step Three of the Analysis is affirmed.

D.  Step Four: Is the claimant capable of performing work which the claimant performed in the past?

In performing the analysis for Step Four, the ALJ determined that Plaintiff has no past relevant work at substantial gainful activity levels. (Tr. 17). The finding of the ALJ as to Step Four of the Analysis is not challenged by either party and the court finds no reason to disturb this finding. The ALJ's determination as to Step Four of the Analysis is affirmed.

E.  Step Five: Is the claimant capable of performing any work existing in substantial numbers in the national economy?

In performing the Analysis for Step Five, the ALJ determined that Plaintiff has the Residual Functional Capacity to perform a limited range of sedentary work. (Tr. 15). The ALJ determined that Plaintiff's RFC includes the capacity to lift and carry up to ten pounds occasionally and lighter items such as small hand tools, and individual case files frequently; stand and walk, with normal breaks for up to a combined total of two hours in an eight hour day and for no more than fifteen to twenty minutes continuously; sit with normal breaks for up to six hours in an eight hour day, but must be allowed to alternate between sitting and standing positions at intervals of one hour for a period of time of two to three minutes on each such occasion; must avoid more than moderate exposure to fumes, odors, dusts, gases and other pulmonary irritants; and must avoid exposure to hazards such as exposed/unprotected heights/excavations, moving parts or dangerous machinery; may not climb ladders, ropes or scaffolds, but may otherwise climb ramps/stairs, balance, stoop, kneel, crouch and crawl occasionally. (Tr. 16-17).

Based on those limitations, the ALJ found that Plaintiff retained the RFC to perform a limited range of sedentary work. (Tr. 17). The ALJ determined that the Plaintiff is characterized as a younger individual, has a limited education, and has no past relevant work at substantial gainful activity levels. (Tr. 17).

Upon considering Plaintiff's vocational characteristics and RFC, the ALJ found that no Medical-Vocational Rules apply directly. (Tr. 17). However, the ALJ used Medical-Vocational Rules 201.24 and 201.18 as a framework and supplemented the testimony of the vocational expert to determine that Plaintiff can perform jobs existing in significant numbers in the economy. (Tr. 16-17). The vocational expert testified that with her limitations, Plaintiff is able to work as a telephone clerk.(Tr. 16). The vocational expert testified that Illinois reports indicate that 43,816 telephone quotation clerk jobs exist, thus there exist a significant number of jobs that Plaintiff is capable of

13

performing. (Tr. 16).

Plaintiff makes two arguments on appeal. First, she contends that the ALJ failed to properly consider the non-exertional limitations as stated by the vocational expert. (Pl.'s mem.at 5). According to the ALJ, the non-examining physicians' conclusions were that Plaintiff had the RFC to perform light work. The ALJ stated that the non-exertional postural limitation required Plaintiff to alternate between sitting and standing positions at intervals of one hour for a period of two to three minutes. (Tr. 16). The environmental limitations, according to the ALJ, included avoiding more than moderate exposure to fumes, odors, dusts, gases and other pulmonary irritants. (Tr. 16).

This court finds the ALJ did properly consider the effects of non-exertional limitations indicated by the vocational expert, Mr. Yep. The vocational expert testified that an individual who could not maintain a seated position for more than an hour may not be able to perform unskilled sedentary work. (Tr. 65-66). The ALJ found, based upon the medical evidence, that Plaintiff can maintain a seated position for an hour but must be allowed to alternate between sitting and standing positions at intervals of one hour for a period of two to three minutes. (Tr. 12). Thus, the ALJ did take the vocational expert's testimony into account when he found that Plaintiff has the RFC to perform work at the light level. (Tr. 15).

Second, Plaintiff contends the ALJ failed to properly discuss and reconcile the evidence elicited by counsel on cross-examination of the vocational expert. (Plaintiff's memorandum at 5). She argues that because the ALJ failed to address the vocational expert's testimony as to toleration of absences due to treatment, this case should be remanded. (Plaintiff's memorandum at 10). The ALJ found that Plaintiff's medical records do not contain any opinions from treating or examining physicians showing she is disabled or even had limitations greater than those previously mentioned. (Tr. 15). There was no need for the ALJ to reconcile the testimony elicited by Plaintiff of Mr. Yep

14

because the ALJ did not find that the Plaintiff would require the absences. The ALJ made the RFC assessment based on all relevant evidence and testimony, and this court finds no reason to disturb the ALJ's evidentiary determinations.

The ALJ's determination at Step 5 is supported by substantial evidence. The ALJ's determination as to Step Five of the Analysis is affirmed.

## VII. CONCLUSION

The ALJ is affirmed at all steps of the disability determination process as outlined above. Plaintiff's motion for summary judgment on the administrative record and pleadings is hereby denied. Defendant's motion for summary judgment is granted.

**ENTER:**

*[signature]*

P. MICHAEL MAHONEY, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

DATE: 7/30/02

AO 450(Rev. 5/85)Judgment in a Civil Case

# United States District Court
## Northern District of Illinois
### Western Division

VICKI GRAVES

v.

LARRY MASSANARI

**JUDGMENT IN A CIVIL CASE**

Case Number: 01 C 50372

☐ Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury rendered its verdict.

■ Decision by Court. This action came to hearing before the Court. The issues have been heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that Plaintiff's motion for summary judgment is denied. Defendant's motion for summary judgment is granted. Judgment is entered in favor of defendant Larry MASSANARI and against the plaintiff Vicki Graves.

Michael W. Dobbins, Clerk of Court

Date: 7/30/2002

Gale L. Graeff, Deputy Clerk